[No. 18476.   Department Two.   May 9, 1924.]

CICERO JOHNSTON et al., Appellants, v. WALTER CHESSER
et al., Respondents.[1]

FRAUD (8, 22)—MISREPRESENTATIONS—RELIANCE UPON—MEANS OF
KNOWLEDGE—EVIDENCE—SUFFICIENCY.  Findings that there was no
fraud in pointing out the boundaries of a timber tract and mis-
representing the quantity of timber, are sustained where it appears
that the location was pointed out only in a general way, the pur-
chasers made their own examination, relying on their own ex-
tended experience as loggers and cruisers, and the property was well
worth the purchase price.

APPEAL (452)—HARMLESS ERROR—ADMISSION OF EVIDENCE.  Error
in the admission of testimony in an action tried to the court is
harmless on trial de novo on appeal.

Appeal from a judgment of the superior court for
Thurston county, Wright, J., entered September 17,
1923, in favor of the defendants, dismissing an action
for rescission, tried to the court.  Affirmed.

James O. Marts and R. H. Fry, for appellants.

Vance & Christensen, for respondent.

FULLERTON, J.—In May, 1923, the respondent Ches-
ser was the owner of two abutting forty-acre tracts of
land situated in Thurston county.  The land was chiefly
valuable as timber land, and Chesser was then logging
it.  On May 23d of the year named, he contracted to
sell the land to the appellants Johnston, together with
his logging outfit, the logs cut and then on the land,
and logs which he had cut from the land and removed
to booming grounds on an arm of Puget Sound.  On the
following day the contract was executed by instru-
ments of conveyance expressing the terms and condi-
tions of the sale.  Some days later, the appellants, con-

[1]Reported in 225 Pac. 442.

ceiving that they had been defrauded in the trans-
action, brought the present action to set it aside and
recover the consideration paid for the property. Issue
was joined on the appellants' complaint and a trial of
the cause had upon its merits, resulting in a decree
denying to the appellants any form of relief.

The claim of fraud is based on the contention that
Chesser and his representative, the respondent Raab,
made false representations as to the position of the
boundary lines of the tract, particularly the line mark-
ing the east boundary, and also as to the quantity of
timber on the tract. It was testified by the appellant
making the examination of the land prior to its pur-
chase that the boundary lines as pointed out to him
included certain heavy timber standing on a tract lying
to the east of the tract sold, and which subsequently
proved not to be so included. It may be that the pur-
chasers were misled in this respect, but an examina-
tion of the evidence in its entirety convinces us that the
misleading was the result of their own hasty action,
and was not due to any misrepresentations on the part
of the respondents. As to Chesser, he was not asked
to point out the boundaries to the appellant and made
no representations to them concerning the boundaries
whatsoever. Such representations as were made con-
cerning the location of the line were made by the re-
spondent Raab, and our reading of the testimony of
the appellant who examined the land, disregarding the
testimony of Raab, convinces us that Raab did not pre-
tend to know more than in a general way of the loca-
tion of the lines. They both agree that, prior to going
onto the land, they went to a point some distance from
it, and from which the east boundary line could be
observed and located in a general way, but that when
they went onto the land the line was not found.

Chesser, while at the premises when the appellants came to examine it, was ill and did not go with them, but both he and Raab testify that, when the parties returned from the examination and described to him certain objects that were visible from places they had visited, he told them that they had gone outside of his boundary lines, as these objects were not visible from any place upon it. It is but fair to say, however, that the appellant mentioned denies this statement, but we think enough does appear to show that he relied more upon his own judgment as to the boundary lines and as to the quantity of timber than he did upon any representations that were made to him.

After this examination, other of the appellants examined it. They were not novices at the business of logging. On the contrary, they were men of large experience. They had logged many timber tracts, and were used to tracing boundary lines, and, while they did not pretend to be cruisers, testified that they could estimate, with a fair degree of closeness, the quantity of timber on any given tract. It appears furthermore that the attorney whom the parties employed to prepare the written conveyances, when the terms of the contract were made known to him, suggested to the appellants the advisability of a further examination, but the appellants, so confident were they of their own abilities to judge of the matter, seem to regard the suggestion as an impertinence rather than well-meant advice.

As to the representations concerning the amount of timber on the tract actually conveyed, the evidence is directly contradictory. The appellants state that Chesser represented to them that the tract contained at least one million feet of merchantable timber. Chesser testified that he told them that it was his be-

lief that it contained that quantity of timber; but that
he told them at the same time that he had never had it
cruised, and that the source of his information was the
man from whom he purchased it. In substantiation of
his statements he produced his grantor, who testified
that he did give that quantity as the amount of mer-
chantable timber on the land, and that the source of
his information was a cruise made some years before.
In further substantiation of his belief he produced a
cruiser who had cruised the tract at his request, and
this cruiser reported that he found some nine hundred
thousand feet of merchantable timber on the land.

But we need not pursue this branch of the inquiry
further. While it is clear from the evidence that the
appellants did not receive the bargain they thought
they were obtaining, it is equally clear, we think, that
this was the result of their own ill-considered and hasty
action, rather than the result of any false or fraudu-
lent representations on the part of the respondents.
Moreover, the property conveyed was not without
value—indeed, the only witness who testified on the
subject gave estimates of value showing that the prop-
erty conveyed was well worth the purchase price—and
it is thus not an instance where fraud can be presumed
from the disparity between the value of the property
and the amount of the purchase price.

The appellants complain of certain rulings of the
court in admitting and rejecting testimony, but these
require no special consideration. As to the first branch
of the objection, it is enough to say that, since this
court examines the record *de novo,* it can itself reject
the incompetent evidence. The exclusion of evidence
is, of course, of more moment, but in this instance the
purport of the evidence rejected is in the record, and
considering it along with the admitted evidence, it by

no means permits or requires a reversal of the decree entered. The decree is affirmed.

MAIN, C. J., BRIDGES, and MITCHELL, JJ., concur.